## S. A. COOKE vs. J. R. WASHINGTON ET. AL.

### SUPREME COURT, AUSTIN TERM, 1883.

1. *Practice—Assignment of Errors.*——Even before the adoption of the "new rules," the rules of practice required that assignments of errors should distinctly specify the ground of error relied upon for reversal, and relieved this court of considering assignment deficient in this respect. See the opinion for assignments *held*, insufficient.

2. *Same Charge of the Court.* The record discloses an instruction asked and refused, and shows that another charge upon the subject was given which is not incorporated in the record. The proposition, that because the court refused the charge requested, it must be presumed that the charge as given was error, cannot be mentioned. The correct rule is, that when the record does not show the cause, the presumption obtains that the court charged the law.

3. *Evidence.* See this case for evidence through conflicting, *held* sufficient to sustain the verdict of a jury.

Appeal from the District Court of Collin County.

*Throckmorton, Brown and Bro., and Hair, Bledsoe and Head,* for appellant.

*S. B. Maxey, W. O. Davis, and Walton & Hill,* for appellee.

#### STATEMENT.

On November 9th, 1872 Cook, filed his petition in trespass to try title, against the appelles, in the District Court of Cook County,

claiming under grant made to Marceline Lazarine, dated March 26th, 1834. The defendant claimed under the Republic and State of Texas, by patents issued at different times. The case was removed by. change of venue to Collin County. The real contest was as to the true location and identification of the Lazarine league, and whether or not it included the patented lands claimed by appellees. The case was tried September 11th, 1875, and verdict was returned and judgment rendered for appellees.

Appellant brings the case before the court, on an assignment of errors copied into the opinion.

The facts so far as material to the questions passed upon will also be found in the opinion.

Opinion by Watts.

As showing sufficient grounds for a reversal of the judgment, appellant assigns the following errors, viz :

1st. The court erred in overruling the motion for a new trial.

2nd. The court erred in giving the instructions asked by the defendants Nos. 1, 2, 3, 5, 7, 15, 17, 17, 18, 19, 20, 24, 25, 26.

3rd. The court erred in the charge given at the request of the jury.

4th. The court erred in refusing charges asked by plaintiff, viz : Nos. 14, 19, 21.

5th. The court erred in refusing to admit the testimony of George Aldrich, and in refusing to admit the certified copy of deed from C. E. Allen to M. E. Converse, and in refusing to admit certified copy of deed from R. and S. Allen to A. C. Allen.

6th. The court erred in refusing to give the charges asked by plaintiff, when the jury asked for an explanation of former charges as shown by bill of exceptions.

7th. The court erred admitting the patents offered by defendants.

8th. The court erred in admitting the certified copies of deeds offered by defendants. The only ground set up in the motion for new trial, that is not named in the assignment of errors, is the following : The verdict is contrary to the evidence and the law, and without evidence, and against the weight of the evidence.

In the consideration of the questions presented by this appeal, the first error assigned will be reserved, and appellees claim that the second assignment of error is so indefinite that the errors sought to

be presented by it, must be considered as waived. This appeal was taken and perfected long before the adoption of the new rules, and the question thus raised must be determined by the decisions construing the Statute then in force upon that subject. That Statute provided that the appellant or plaintiff in error, should distinctly specify in the assignment, the grounds upon which he relied, and errors not so distinctly specified should be considered by the Supreme Court as waived.

In Earle vs. Thomas 14th, Texas 593 the appellant assigned errors as follows :

The court erred in the charge of the law given to the jury.

The court erred in refusing the charge asked by the defendent.

There the point was made, that the first was too general, but the court held that the second was sufficiently specific, and that the refused charge sufficiently indicated the error in the charge given.

Commenting upon the question in the case Justice Wheeler said :

What shall be a sufficiently special assignment of error, is not susceptible of precise definition. It should be such as to draw the mind to the apprehension of the particular error intended to be relied on.

This is about as definite and certain as any rule announced by the court, in the construction of that Statute. In some cases it has been said, that the party must put his finger upon the particular error relied on. In others that if the charge of the court is complained of, the precise error must be pointed out.

Dunsun vs. Payne 44th, Rexas, 543.

The real object of an assignment of errors is to call the attention of the court to the error complained of, and to give notice to the opposite party, as to what particular error or errors the appellant relies upon to secure a reversal of the judgement. Without such notice the opposite party would be put to such disadvantage as would not be warranted by law. This assignment is in effect that the court erred in fourteen charges given to the jury, as to what particular rule of law has been infringed by the court in any or all of these charges is in no way indicated by the assignment. In such case it seems to us that the statute is imperative, and such errors must be considered as waived.

These several charges, however, have been examined in connection with all the other charges given, and there is no such error shown as readily attracts the attention of the court. But on the contrary

construing all the instructions given by the court together, and we think that by them the law applicable to the case made by the evidence is clearly given.

It is claimed that the court erred in refusing to give the charge asked by appellant when the jury returned into the court and asked for an explanation of charges given, and also in the charge given by the court at that time. As shown by the bill of exceptions, the jury returned into court and asked for additional instructions, whereupon the appellant asked the court to give the following instructions, viz :

"That in this cause absolute certainty as to the location of the grant or its lines and corners are not required, but that they must be governed by the preponderance of the testimony." This charge was refused, and the record shows that the court did give the jury at the time an instruction which is not in the record. The proposition, that as the court refused the above charge, which is claimed to be correct in law, that we must presume that the charge that the court did give was erroneous, cannot be maintained.

When there is nothing in the record to the contrary, the presumption will be indulged, that the court charged the law. Under no state of the case will the presumption arrise, that the court failed to do its duty, or that it committed an error. On the contrary, the burden is upon the party who asserts an error in the charge, to make it manifest from the record. It might be that the court had embodied the refused charge, in that given, and if that was so the court very properly refused to repeat the instructions already given to the jury.

Tne 14th, charge asked by appellant and refused by the court is as follows :

It was the duty of the surveyor to have established, and designated the lines and corners of the survey, but if he failed to do so, it will not invalidate the title, if the land can be identified by other lawful means.

In other paragraphs of the charge, the court had very fully submitted the evidence, as to the identification of the land, with full explanations as to the rules with respect to boundaries. Besides the charge as asked would require an explanation or what was meant by the expression "other lawful means". As before remarked, the lawful means of identification had been fully submitted, together with the rules of governing the application of calls in the grant, to the

survey upon the ground, and the court was not called upon to repeat what in effect had already been given.

It is claimed that the court erred in refusing the 19th, paragraph of the charge asked by appellant, which was in substance that the government having granted the land to Lazarine, that the patents subsequently issued so the appellees, and those under whom they claim, would not support the Statute of limitation of three years.

That question was determined adversely to the position taken by appellant, in the case of Whitehead vs. Foley 28th, Texas, 14. As an abstract propositions of law the 21st, paragraph of the charge asked by appellant and refused by the court, is correct. The Statute of limitations was suspended from the 28th, day of Januaro 1861 to the 30th, day of March 1870, and the court so instructs the jury in other portions of the charge. And as a general rule the filing of the petition suspends limitation, but in this case it was claimed that the petition was filed and the clerk at the direction of the appellant, had not issued any citations to the defendants, until more than twelve months had elapsed. And upon this issue the charge as asked would be erroneous, besides the court submitted that issue to the jury in a charge quite as favorable to the appellant as the law would warrant.

By billl of exceptions it is shown that after proving that George Aldrich was dead, appellant offered in evidence a certified copy of his evidence, taken before a committee of the Congress of the Republic, respecting the manner in which the block of surveys, of which Lazarine is one, was made, together with other surveys made elsewhere by said Aldrich, upon the objection of appellees that evidence was excluded, and it is urged that the court erred in doing so.

This evidence was taken in an *ex-parte* proceeding to which the appellees were not parties, and had no opportunity of cross examination, and was no more admissable in evidence in this case, than would have beeen the naked affidavit of the witness made before some officer authorized to administer oaths.

It is a sufficient answer to the proposition, that the court erred in excluding the certified copy of the deed from C. M. Allen to M. E. Converse, to say that there is no pretense, that there is any description whatever contained in that deed of the land in controversy.

The deed from Rowland and Sally Allen to A. C. Allen, which was excluded from the jury is not copied into the record, and hence we are not able to determine, that there was any error in the ruling of

the court in this particular, besides it is not relied upon by appellant.
There remains but one other question which is relied upon, and that
is the verdict is not supported by, but is against the evidence.

The Lazarine is one of a block of surveys, that purports to have
been made by one George Aldrich, on the south side of Red River
in which is now Grayson and Cooke Counties. The grants embra-
cing these surveys were made by George W. Smith commissioner in
1834. The surveys were not plotted upon the map of Fannin County
to which the land then belonged, nor upon the map of Cooke Coun-
ty, since its organization.

There is a plot of this block of surveys in the General Land Office,
originally returned to that office upon a sheet of paper, many such
have been pasted upon cloth and bound together, and now constitute
what is known as atlas "A". As shown by this plot commencing
near the mouth of Mineral Bayou on the south side of Red River,
and going up that river there are eleven surveys of one league each,
all having a river front and one adjoining the other. The Marceline
Lazarine being the eleventh league. The field notes of these several
grants called for fixed corners on the river witnessed by bearing
trees. As disclosed by the record, these are no marked lines or fix-
ed corners or elsewhere by which to identify and locate the Lazarine
league, the surveyor who made the survey for that purpose, says that
he commenced at a point on the river near the mouth of Mineral
Bayou, and ran both the back and front lines of these various grants
according to their respective field notes, and in this way fixed and
located the Lazarine grant as claimed by the appellant to be its lo-
cation. He and other witnesses also say that these several leagues
including the Lazarine, as located by him, adjust themselves with
reasonable certainty to the course and bends of the river, as shown
by the plot on page 55 of the transcript. Other witnesses say there
are two Mineral Bayous emptying into Red River from the South,
one six miles below the other, and thus raise some doubt as to which
of these Bayous the Ybarbo grant, calls for; this latter grant was tak-
en as the basis for the survey made to identify the Lazarine grant.
Several witnesses say that the Lazarine grant might be slided up or
down the river a half mile either way, and it would adjust itself to
the river and the other calls in the grant, just as well as it does where
claimed by appellant, this is denied by other witnesses. Pusy, a wit-
ness for appellant says that he measured the river from the Lazarine

to the Robinson league by actual survey, and that the plot on page 187 of the transcript correctly shows the course and bends of the river. He says that to commence at the north-west corner of the Lazarine as claimed by appellant, and run the meanders as called for in the field notes of the several grants to the lower corner of the Robinson, that the line would cross to the north side of the river and be in the Indian Territory for more than a third of the distance. He also says that to commence at the North-west corner of the Lazarine as claimed by appellants, and run the course and direction called for by the English field notes on the river line, it would go into the Chickasaw Nation 1250 varas north of the lower corner of the Lazarine on the river as claimed by appellant; and to commence at the lower corner of said survey as claimed by appellants, and reverse the calls as contained in the field notes, and run the course and distance a point would be reached 1250 varras south of the river. Taking the course and bends in the river as delineated upon Perry's map, and he swears that it is correct, and made accorning to an actual survey upon the ground, and comparing it with the certified plot from atlas "A", shows that it is impossible for both to be correct. The shape of the surveys as adjusted to the river are quite different, and the course and bends in the river do not correspond.

Throughout, the evidence is conflicting, and doubtful, the verdict of the jury determined the ecredibility of the witness in favor of appellees, and upon their evidence base their finding; and a careful examination of the record fails to show that the verdict is not sustained by the evidence. We conclude that the judgment ought to be affirmed.

JUNE 26th, 1883.

Report of Commissioners of Appeals examined, their opinion adopted and the judgment affirmed.

WILLIE, C. J.